IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 0 1 2000

CLERK

MARGIE M. GONZALES,

    Plaintiff,

vs.

Civ. No. 99-1279 JC/RLP

KENNETH S. APFEL, Commissioner of
the Social Security Administration,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.    Plaintiff, Margie M. Gonzales, (Plaintiff herein), filed an application for Disability Income Benefits (DIB) under Title II of the Social Security Act on July 26, 1996 (Tr. 122), alleging that she had become disabled as of April 22, 1996, as the result of a work related injury which occurred on October 18, 1993. (Tr. 190, 122).

2.    Plaintiff's application for benefits was denied at the first and second levels of administrative review. (Tr. 102, 100). A hearing was conducted by an Administrative Law Judge (ALJ) on March 31, 1998. The ALJ found that Plaintiff was not disabled in a decision dated May 13, 1998. (Tr. 23-35). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC" herein) for light, simple, unskilled work despite severe impairments of an annular tear of a thoracic disc and depression. She further found that Plaintiff could not return to her past relevant work, but could perform the job of in-home

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



Companion, which existed in significant numbers in the national economy.

3.      Plaintiff appealed the denial of benefits to the Appeals Council, which declined to review the ALJ's decision on August 4, 1999. (Tr. 12-15). The matter now before the Court is Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. (Docket No. 16).

I.      **Standard of Review**

4.      This Court reviews the Commissioner's decision to determine whether the administrative record contains substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute our discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

5.      The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; the burden shifts to the Commissioner at step five. **Id.**

## II.     Vocational Evidence.

6.     Plaintiff was born on August 1, 1946. (Tr. 122). She has a GED and some training as a certified nurses' aide ("CNA" herein). (Tr. 280, 198). Her past relevant work has been as a home health aid and a CNA. (Tr. 78-80, 82,198).

## III.    The Medical Record

7.     Plaintiff was working as a CNA on October 18, 1993, when she suffered an injury which caused pain in her upper back, neck and right arm. (Tr. 143, 190, 261). She was off work for approximately three months while being treated conservatively for C-6 radiculitis. (Tr. 258-261, 270). She initially responded to conservative care, but by mid November her symptoms had worsened. She was placed in a cervical collar and referred to Michael Pryor, M.D. (Tr. 270). Dr. Pryor evaluated her on January 3, 1994, noting tenderness to palpation over spinous processes of T3-T5, an area of discomfort in superior medial border of right scapula, and apparent trigger points along the entire medial border of each scapula. Other findings were normal. Dr. Pryor diagnosed a "whiff" of fibromyalgia[2], prescribed Imipramine, an antidepressant, for pain relief, suggested additional exercises, and encouraged her to return to work in a week "or so." (Tr. 241-242). Plaintiff returned work to in 1994, and continued to work, at least intermittently, until 1996. (Tr. 151).

8.     In the Fall of 1994, Plaintiff had an evaluation for rheumatic arthritis and an EMG, the results of which were normal. (Tr. 240-241). She returned to Dr. Pryor on November

---

[2]Fibromyalgia is inflammation of the fibrous and connective tissue, causing muscle and joint pain, stiffness, and fatigue. A diagnosis is usually made after eliminating other conditions with similar symptoms, as there are no specific diagnostic tests for this affliction. See Jeffrey Larson, Fibromyalgia, in **the Gale Encyclopedia of Medicine** 1185-86 (Donna Olendorf et al. eds.1999).

14, 1994, reporting that pain had spread to her scapula, left trochater (hip) and lumbo-sacral spine. On physical examination, Plaintiff demonstrated trigger points at the superior medial scapula, left and right, along the greater trochateric regions and in the lumbo-sacral region, left and right. Dr. Pryor again diagnosed fibroymyalgia. He recommended a higher dose of Imipramine, prescribed Lodine, a nonsteroidal anti-inflammatory and aerobic exercise. (Tr. 241).

9. Although the administrative record contains no treatment records from this point until September 1995, a summary of medical care by a subsequent physician indicates that Plaintiff was followed by her private physician until September 18, 1995, being treated conservatively with Amitriptyline[3] and Ultram.[4]

10. Plaintiff was evaluated by Jeffrey Grey, D.C., on September 18, 1995, complaining of back pain. She was working at this time, but stated that she was in constant pain, relieved only by use of a back support. On physical examination, Plaintiff had significant pain and muscle spasm in her right mid thoracic region, thoracic paraspinal muscles, and mid and lower trapezius, most pronounced at T7-9. Dr. Grey diagnosed chronic, moderate thoracic and rib subluxation malposition with resultant muscle spasm and soft tissue inflammation. He placed Plaintiff in an off-work status, indicating that she would not reach maximum medical improvement until March 1996. He also instituted a program of chiropractic manipulation. (Tr. 142, 246-257).

---

[3]*Amitriptyline*, also known as *Elavil*, is an antidepressant. **1998 Physicians' Desk Reference** at 3163-3165.

[4]*Ultram* is an analgesic used for the management of moderate to moderately severe pain. **1998 Physicians' Desk Reference** at 2064-2066.

4

11.     Plaintiff was evaluated by Dr. Michael Ford at the Riverton Orthopedic Clinic on November 27, 1995. Dr. Ford's records are not contained in the administrative record, but are recounted in the report of a subsequent examining physician. Dr. Ford felt that Plaintiff's history was compatible with a possible thoracic disc and recommended an MRI, which was negative. He also conducted an evaluation of Plaintiff's neck, assigned her an impairment rating based on loss of range of motion, and stated that she could return to work without restrictions as of December 14, 1995. (Tr. 264, 271).

12.     Because of persistent symptoms, Plaintiff was referred by her state's workers compensation administration to Kenneth Pettine, M.D., a neurosurgeon, who examined her on January 19, 1996. (Tr. 267, 271). Based on physical examination, history, and an MRI which he read as abnormal, Dr. Pettine diagnosed possible traumatic annular tear at T9-10. He recommended follow-up with a discogram. (Tr. 267, 269). Discogram demonstrated extravasation of dye and reproduction of Plaintiff's symptoms at the T9-10 level. (Tr. 267, 271). Dr. Pettine placed limitations on Plaintiff's activities, indicating that she was to engage in no heavy lifting, twisting, bending or stooping. These limitations prevented her from returning to full or light duty work. (Tr. 126). He discussed his findings with Plaintiff on March 5, 1996, and recommended fusion. (Tr. 63, 268, 271).

13.     Anne MacGuire, M.D., a rheumatologist, conducted a workers' compensation evaluation on Plaintiff on March 12, 1996. (Tr. 263-266). Dr. MacGuire's report indicated that Plaintiff:

- Was observed to sit for 10-15 minutes, stand for only a few minutes, but had no limitation walking. (Tr. 265);

- Had complaints of discomfort related to her thoracic spine rather than her neck. (Id.);

5

- Had an extremely positive withdrawal reaction on examination, flinching, arching her back and jerking away suddenly when touched, inconsistent with a true disc injury. (Id.);

- Had a very erratic muscle strength examination, with considerable give-way weakness. Muscle strength varied each time tested. She had no muscle wasting up the upper extremity muscle groups, reasonable upper extremity muscle mass, but poor strength. (Id.);

- Had no demonstrable neurologic impairment. (Tr. 266);

- Had a history and findings compatible with an injury or illness and may include significant, intermittent or continuous muscle guarding; (Id.);

Dr. MacGuire disagreed with Dr. Pettine's reading of the discogram, characterizing it as demonstrating some mild degeneration at T-10. (Tr. 265). Based on her findings, Dr. MacGuire concluded:

> This patient should probably not return to full duties as a CNA. She is not capable of doing that type of manual labor. Her lifting restrictions should be no more than 25 pounds on an intermittent basis and 10 pounds on a regular basis. She should be encouraged to quit smoking and participate in an ongoing active fitness program. She cannot work overhead. She may do repetitive hand motion and activities without restrictions, as long as her weight restrictions are not exceeded. She can do light sedentary and clerical work.

(Tr. 266).

14. A third independent medical examination was conducted on May 25, 1996, by Robert Weiner, M.D., an orthopedic surgeon. (Tr. 270-274). Dr. Weiner commented that Plaintiff's findings at the time of Dr. MacGuire's examination "appeared to be more on an emotional basis than due to organic pathology." (Tr. 272). He also documented reduced and painful range of motion relative to Plaintiff's lumbar, sacral and cervical spine, and tenderness to palpation (light touch) from the occiput to the sacrum. He agreed with Dr. Pettine that Plaintiff had an annular tear at T9-10, but stated that this finding could not

6

explain her symptoms and clinical findings, and further stated that he did not think the tear had occurred at the time of her work injury.   He felt her complaints were indicative of myofasciitis with marked functional overly.[5]

15.     Plaintiff consulted a Dr. Whipp on  June 18, 1996.  There is no indication that Dr. Whipp examined Plaintiff at that time.  He indicated that he would go through her records to see if there was a documented problem with her dorsal (thoracic) spine related to her work injury.  His next notation simply indicates that he did not believe she was a surgical candidate.  (Tr. 275).  There is no indication that Dr. Whipp made any diagnosis, or recommended any type of treatment.

16.     Plaintiff testified that she could not afford to see a doctor after workers' compensation benefits were discontinued. (Tr. 46).  She saw no other medical personnel until mid 1997, after moving to New Mexico from Wyoming, when she was seen at Rio Arriba Counseling Services, and at Health Centers of Northern New Mexico  (Tr. 279, 286,284).    A psychological evaluation was conducted on August 15, 1997, by Jeanne Juliet, M.A., LPCC (Licensed Professional Clinical Counselor). Based on Plaintiff's history, complaints and a "symptom screen," Ms. Juliet diagnosed Major Depression, Moderate. She recommended "brief psychotherapy to help her adjust to her present situation, grieve her losses, redefine her self worth and thus overcome her depression."   (Tr. 279-281). Plaintiff's chart was reviewed by a physician at Rio Arriba Counseling Services on September 4, 1997, who indicated, "Consult - new pt I have not seen, but has chr. pain & reactive depr.  Could try 25-50 mg Elavil." (Tr. 276).  On October 9, 1997, Plaintiff was

---

[5]Functional overlay is an emotional response to physical illness. **Taber's Cyclopedic Medical Dictionary**, 16th Ed. at 705 (1989).

seen by J. Smith, RN MS, a certified family nurse practitioner with Health Centers of Northern New Mexico. (Tr. 284). She complained of sleep disturbance, back pain and leg numbness. She was neurologically intact on physical examination. Ms. Smith noted that Plaintiff had stopped taking Elavil (Amitriptyline). Ms. Smith prescribed Trazadone[6] in place of Amitriptyline, and Tylenol #3. On December 4, 1997, Plaintiff was examined by Ms. Smith for complaints of headache and general discomfort in her back and ribs. Her physical exam, as recorded, was unremarkable. Ms. Smith again indicated that Plaintiff had chronic pain and depression, and refilled her prescriptions, including those for Trazodone and Tylenol #3. (Tr. 282).

## IV.     Plaintiff's testimony

17.     Plaintiff testified that she had constant, severe pain across her upper back and in her neck and shoulders, constant burning sensation in her left leg, and intermittent pain in her right leg and down her back. (Tr. 47-48). She stated that she could walk only about 1 block, that her back frequently "locked" up on her, and that she needed assistance to straighten up when this occurred. (Tr. 51, 54). She wore a back brace prescribed by Dr. Pettine to prevent twisting of her spine. (Tr. 54). She also described difficulty sleeping (Tr.62, 52-53), an inability to sit for more than 15 minutes, (Tr. 57), difficulty standing because of leg pain (Tr.57-58), intermittent pain and swelling of her hands (Tr. 58), memory difficulties (Tr. 70, 94) and depression. (Tr. 60-62, 68-69).

18.     Much of Plaintiff's testimony was corroborated by her common law husband, who testified at the administrative hearing, and by friends and relatives who submitted letters

---

[6]*Trazodone* is an antidepressant. **1998 Physicians Desk Reference** at 518.

and/or information forms on her behalf. (Tr. 41, 50, 73-74, 92, 95, 214-229, 230, 232-233).

**VI.   Analysis**

19.   Plaintiff contends that the ALJ failed to accord proper weight to the opinions of the medical care professionals who evaluated and treated her for depression in 1997. She asserts that if the ALJ did not accept the views of those care providers, proper legal principles required her to further develop the record with regard to Plaintiff's mental impairment.

20.   The ALJ noted that the registered nurse and licensed therapist who evaluated Plaintiff in 1997 were not "acceptable medical sources" as that term in defined in pertinent regulations [7], but nonetheless determined that their observations were relevant. (Tr. 28-29). The ALJ did accept the diagnosis made by Plaintiff's care providers in 1997, and found that she suffered from reactive depression caused by chronic pain, and that this impairment was "severe." ( Tr. 24, 29). The fact that Plaintiff was diagnosed as suffering from depression, however, does not automatically mean that she is disabled. The ALJ prepared the Psychiatric Review Technique Form, indicating that Plaintiff demonstrated four characteristics of depressive syndrome (anhedonia, sleep disturbance, decreased energy and thoughts of suicide). In evaluating the functional implications of this condition, the ALJ stated: "I resolve doubts in (Plaintiff') favor and find that she has had (sic) been limited to simple, unskilled work during times at issue herein." (Tr. 30, 33-35).   The ALJ considered, and indeed accepted, evidence of Plaintiff's mental impairment.

---

[7]See 20 C.F.R. §404.1527 and 20 C.F.R. §404.1513(a) & (e).

21.  Further factual development regarding Plaintiff's mental impairment was not required. The Commissioner is granted broad latitude in determining whether or not to order consultative examinations. **Diaz v. Secretary of Health and Human Services**, 898 F.2d 774, 778 (10th Cir. 1990). In this case, the medical doctor at Rio Arriba Counseling Service stated that Plaintiff suffered from chronic pain and reactive depression. "Where the depression is not separable from the applicant's other non-exertional impairment, we cannot say the (Commissioner) erred in refusing to order (a consultative) examination." **Id.**

22.  Plaintiff contends that the ALJ erred by failing to address the diagnosis of fibromyalgia made by Dr. Pryor, a treating physician, in 1994. Substantial weight must be given the opinion of a treating physician unless good cause is shown to disregard it. **Goatcher v. United States Dep't of Health & Human Servs.**, 52 F.3d 288, 289-90 (10th Cir.1995). No other treating or examining physician who evaluated Plaintiff diagnosed fibromyalgia, and Dr. Pryor himself did not believe Plaintiff was unable to work as a result of fibromyalgia. (See, e.g., Tr. 242). Although the ALJ did not specifically mention Dr. Pryor's diagnosis of fibromyalgia, she did accept that Plaintiff had chronic back pain. Accordingly I find that the ALJ did not disregard Dr. Pryor's opinion.

23.  Plaintiff seeks reversal, contending that the ALJ failed to consider the combined effects of her impairments. The ALJ specifically reviewed the medical record, discussing Plaintiff's physical and mental impairments. She concluded that Plaintiff's residual functional capacity was reduced for both because of her physical condition and because of her depression. I perceive no error because the ALJ considered all material medical

10

evidence. **Cf. Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1500 (10th Cir. 1992).

24. Plaintiff contends that the ALJ's credibility evaluation was flawed, in that it failed to follow the principles established in **Luna v. Bowen**, 834 F.2d 161, 163 (10th Cir. 1987), and because the ALJ improperly emphasized evidence from non-treating physicians, Drs. MacGuire and Weiner.

25. The proper framework for evaluation of a claim of disabling pain is: (1) whether the claimant establishes a pain producing impairment by objective medical evidence; if so (2) whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling. **Luna**, 834 F.2d at 163-164. In this case, because objective medical evidence showed that Plaintiff had a back problem producing pain, the ALJ was required to consider her assertions of severe pain and to "decide whether [s]he believe[d them]." **Luna**, 834 F.2d at 163; §42 U.S.C. 423(d)(5)(A).

26. In evaluating the credibility of pain testimony, the ALJ should consider factors such as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." **Hargis v.Sullivan**, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting **Huston v. Bowen**, 838 F.2d 1125, 1132 and n. 7 (10th Cir. 1988); **accord Luna**, 834 F.2d at 165-66.

27. The ALJ cited to the following factors, either in direct comment on Plaintiff's credibility, or in evaluation of the medical fact in general:

- Although Plaintiff told Dr. Weiner in 1996 that she had "always" had mid-back pain, medical records document that she had failed to mention pain in the thoracic region for two years following her on-the-job injury, refuting her allegation of chronic disabling back pain and reflecting adversely on her overall credibility. (Tr. 27).

- Plaintiff exhibited an "extremely positive withdrawal reaction," unusual for an individual with a significant disc injury, when evaluated by Dr. MacGuire.

- Dr. MacGuire found that Plaintiff had the RFC for light, sedentary and clerical work. (Tr. 31).

- In Dr. Weiner's opinion, Plaintiff's physical examination was "erratic," and the annular tear documented by discogram could "in no way" explain all of the symptoms and clinical findings related to Plaintiff back and upper right arm. (Tr. 27).

- Dr. Whipp never advised Plaintiff to take medication or use any conservative treatment measures, and his report "clearly shows that he did not in any way advise her that she had a severe back impairment." (Tr. 27)

- When Plaintiff contacted Dr. Whipp in July 1996, she did not seek additional medical care, did not schedule an appointment, and did not request pain medication. (Tr. 28).

- Plaintiff did not seek any medical attention from June 1996 to October 1997. (Tr. 28).

12

In challenging the ALJ's evaluation of credibility, the Plaintiff asks this Court to reweigh the evidence, which it cannot do[8]. Following review of the record, I conclude that substantial evidence supports the ALJ's credibility determinations, for the reasons stated in her opinion.

28.     Finally, Plaintiff contends that ALJ posed an incomplete hypothetical question to the vocational expert ("VE" herein), and that the ALJ distorted the VE's testimony with regard to the job of companion. The VE testified that an individual of Plaintiff's age (51), education (GED) and vocational background (home health aide), had transferable skills to the position of companion, which is considered light work (Tr. 84, 88). The ALJ then asked the VE to assume a retained functional capacity to sit, stand and walk for six hours in an eight-hour day; lift and carry 25 pounds intermittently and 10 pounds of a regular basis; use her hands repetitively, but an inability to work overhead.  (Tr. 84-85).  This description of Plaintiff's retained physical ability came directly from the report of Dr. MacGuire (Tr. 266), and is therefore supported by substantial evidence.   The ALJ further asked the VE to assume that the individual was limited to a job that was "pretty routine" and not "real stressful."  (Tr. 89).  The VE testified that "the position of companion might create a problem . . . because [the companion] has to remember medications and well . . . could have to remember medications." (Tr. 89-80).  He testified there were 1,200 companion jobs available within New Mexico and 181,000 available nationally, and that 60-70 per cent

---

[8]Plaintiff also contends that the ALJ erred by ignoring the evidence presented by her family and friends.  While information from family and friends may help the Commissioner understand how a claimant's impairments affect the ability to work, 20 C.F.R. 404.1513(e)(2), this information is not binding on the Commissioner.   No error occurred because the ALJ did not discuss the evidence presented by Plaintiff's family and friends.

of these jobs required the companion to keep track of medications. (Tr. 89, 91).

29.   The ALJ found that Plaintiff was not limited by the memory difficulties that would affect her ability to perform the job of companion, stating that there was no credible evidence that she had experienced any recent or remote memory problems, and no evidence that she would have any difficulty in dispensing medications to one person, "especially if such medications are routinely prescribed and did not continually change." (Tr. 31).

30.   A VE's testimony provides substantial evidence to support the ALJ's findings only if the hypothetical question presented to the expert adequately reflects the state of the record. **Gay v. Sullivan**, 986 F.2d 1336, 1341 (10th Cir. 1993); **Hargis v. Sullivan**, 945 F.2d at 1492. There is no evidence on the question of whether medications prescribed for those who employ companions "are routinely prescribed and [do] not continually change." Therefore, the ALJ's final determination of non-disability can only be upheld if the 30-40 per cent of companion jobs, those not requiring a companion to remember medications, constitutes a sufficient number in the economy. 42 U.S.C. §423(d)(2)(A) (1995). There is no "bright line" establishing the number of jobs necessary to constitute a "significant number." That determination is left to the ALJ's "common sense in weighing the statutory language as applied to a particular claimant's factual situation." **Trimiar v. Sullivan**, 966 F.2d 1326, 1330 (10th Cir.1992) (quotation omitted). I note, however, that the Tenth Circuit has previously determined that the existence of 57,000 jobs in the national economy is "significant." **Posey v. Chater**, 1995 W.L. 564509 (10th Cir. (Okla.). (copy attached). The VE's testimony constitutes substantial evidence that there are

14

54,300-72,400 jobs as a companion available in the national economy which would not require keeping track of medications. Accordingly, I find no grounds upon which to reverse the ALJ's decision that Plaintiff is not disabled. **Berna v. Chater**, 101 F.3d 631, 633 (10th Cir. 1996) (subsidiary findings necessary to support ALJ's determination on alternative grounds included in ALJ's decision).

## IV.    Recommendation

31.    For these reasons, I recommend that Plaintiff's Motion to Reverse and Remand be denied, and that the decision of the Commissioner denying Plaintiff's Application for DIB be affirmed.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**

For Plaintiff:      Michael D. Armstrong. Esq.

For Defendant:   Raymond Hamilton, Esq.
                 Katauna J. King, Esq.

67 F.3d 312 (Table)  
Unpublished Disposition

Page 1

(Cite as: 67 F.3d 312, 1995 WL 564509 (10th Cir.(Okla.)))

NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

George W. POSEY, Plaintiff-Appellant,  
v.  
Shirley S. CHATER, Commissioner of Social Security, [FN1] Defendant-Appellee.

FN1. Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

No. 94-7170.

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1995.

ORDER AND JUDGMENT [FN2]

FN2. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470.

Before BALDOCK, HOLLOWAY, and BRORBY, Circuit Judges. [FN3]

FN3. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

**1 George W. Posey appeals the order of the district court affirming the Secretary's denial of his application for disability insurance benefits and supplemental security income benefits. Our review confirms the Secretary's decision to be supported by substantial evidence, and we affirm.

Mr. Posey alleges disability because of lower back and leg pain and breathing problems. Because the administrative law judge (ALJ) found that Mr. Posey could not perform his past relevant work as a road repairman, he proceeded to step five of the standard five-step evaluation process. Relying on the opinion of a vocational expert that Mr. Posey could do the light work of a heavy equipment operator and that these jobs existed in significant numbers, the ALJ found Mr. Posey to be not disabled.

On appeal, Mr. Posey argues that: (1) the ALJ's decision is not supported by substantial evidence; (2) additional back x-rays should have been obtained; (3) the ALJ improperly relied on the grids and failed to perform the pain analysis mandated by Luna v. Bowen, 834 F.2d 161 (10th Cir.1987); (4) the hypothetical asked of the vocational expert was inaccurate and incomplete; and (5) the ALJ failed to apply pertinent regulations.

We review the record to determine whether the Secretary's findings are supported by substantial evidence and whether correct legal principles were applied. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir.1991). We may neither reweigh the evidence nor substitute our decision for that of the Secretary. Id.

Mr. Posey has the burden of proving his disability which must be the result of a medically determinable physical or mental impairment. See Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.1988); see also Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir.1990)(medical evidence must corroborate claimant's testimony that she was unable to work). Based upon this record, there is no medical evidence to establish that Mr. Posey's

67 F.3d 312 (Table)  
(Cite as: 67 F.3d 312, 1995 WL 564509, **1 (10th Cir.(Okla.)))

Page 2

physical impairments preclude all substantial gainful activity. The medical tests done on Mr. Posey's back and pulmonary system reveal slight degenerative changes but are essentially unremarkable. See II R. 117, 233. Mr. Posey's allegations of inconsistent subjective restrictions cannot outweigh the normal objective medical evidence of record. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990). [FN4]

> FN4. Further, it was unnecessary for the ALJ to order additional back x-rays, as the x-rays reviewed by the consultative physician were sufficiently current, and there was no indication that additional x-rays would reveal any significant changes.

Mr. Posey implies error relating to the ALJ's reliance on the grids. The ALJ, however, clearly did not rely exclusively on the grids in making his determination. He properly considered all the evidence, applied the relevant factors from Luna, 834 F.2d at 165-66, and resorted to the testimony of a vocational expert to establish the existence of a significant number of jobs in the national economy appropriate for Mr. Posey. See Trimiar v. Sullivan, 966 F.2d 1326, 1332-33 (10th Cir.1992)(discussing proper use of grids).

Mr. Posey next argues that the hypothetical asked of the vocational expert was inaccurate and incomplete. Initially, we note that, contrary to Mr. Posey's position, it is the ALJ, not the vocational expert, who determines a claimant's residual functional capacity. See Williams v. Bowen, 844 F.2d 748, 751-52 (10th Cir.1988)(explaining the role of the decision maker in arriving at a residual functional capacity determination). Furthermore, our review of the record convinces us that the hypothetical presented to the vocational expert properly accounted for all of Mr. Posey's impairments. The ALJ's conclusion that there are a significant number of jobs available which Mr. Posey could perform, based on the vocational expert's identification of 57,000 jobs nationally, see II R. 50, is supported by substantial evidence. See Kelley v. Chater, 62 F.3d 335, 338, (10th Cir.1995)(citing Trimiar, 966 F.2d at 1330-32).

**2 Finally, we note that the regulations cited by Mr. Posey do not apply to the facts of his case. The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

END OF DOCUMENT

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works